UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CRIM. NO.: 7:20-CR-00020-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | GOVERNMENT'S RESPONSE |
| | ) | IN OPPOSITION TO DEFENDANT'S |
| v. | ) | MOTION TO SUPPRESS |
| | ) | |
| HOWARD PIERCE | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to the defendant's motion to suppress, and shows unto this Honorable Court as follows:

PROCEDURAL BACKGROUND

The defendant is charged in an indictment on two counts of possessing a firearm as a convicted felon. The defendant filed a motion to suppress on August 14, 2020.

FACTUAL SUMMARY

On November 21, 2015, officers with the Robeson County Sheriff's Office responded to a shots fired call at Kate Denny Road, Red Springs, N.C. When Officer Jason Varnum arrived, he observed an African American male being placed into the back of an ambulance. He also learned that a second individual, Howard Pierce, Jr., the defendant's son, was also shot. Law enforcement interviewed Pierce, Jr. who stated that they were throwing a party at the residence (201 Kate Denny Road) and an altercation occurred. Pierce Jr. claimed that two partygoers were asked to leave— one of whom attempted to pull out a gun. Pierce Jr. then stated he pulled out his

firearm and shot it into the air. Multiple gun shots were ultimately exchanged, and one individual was fatally wounded. Sgt. Damien McLean interviewed a number of witnesses as part of the death investigation. On November 30, 2015, he interviewed Christopher Thompson, the deceased victim's brother, who stated that he observed the defendant possessing a firearm and identified it as a .22 revolver with a white or brown handle. On December 2, 2015, Sgt. McLean interviewed Trakeysha Bledsole, who stated she observed shots being fired from behind a tree and one of the shots struck the victim. She stated that she observed the defendant about 50 feet from the tree possessing a silver .22 caliber revolver that hung down his leg. She also observed the defendant possessing it at the party prior to the shooting. Desirae Bledsole was also interviewed on December 2, 2015. She stated that she observed the defendant with a long gun on his side. That same day, investigator McLean interviewed Randy Hunt, another party attendee, who stated that when he arrived to the party, he observed the defendant with a pistol that looked like a .22 caliber target revolver. Other eyewitness also described an Indian male possessing a long revolver in a leather holster.

On December 3, 2015, Investigators McLean and Obershea traveled to 251 Kate Denny Road, Red Springs, N.C. 28377, the defendant's residence, and interviewed the defendant and his son, Howard Pierce, Jr. 251 Kate Denny Road is next door to where the party and shooting occurred. The defendant stated that he carried a blackpowder pistol the day of the shooting. He provided that pistol to law enforcement along with a brown holster that contained .44 caliber ammunition, which

2

did not match the black powder pistol. Howard Pierce Jr. provided a statement and turned over his .40 caliber handgun that he retrieved from inside the defendant's residence. In addition, Pierce Jr. advised law enforcement that there were additional guns in a safe inside the defendant's residence. He claimed they belonged to his mother. The defendant is a convicted felon and prohibited from possessing firearms and ammunition. On December 8, 2015, the North Carolina Medical Examiner conducted an autopsy on the victim of the shooting and retrieved a projectile.

Based on the foregoing, investigator McLean applied for and received search warrants on December 9, 2015 for properties associated with the defendant and his son, Howard Pierce Jr, which are both located in close proximity on Kate Denny Road. Upon execution of the search warrant at the defendant's residence, they recovered one firearm in a bedroom. In a safe inside the residence, investigators recovered a rifle, various ammunition, the defendant's driver's license, and the defendant's prescription medication. The defendant was then arrested for possession of a firearm as a convicted felon.

## ARGUMENT

### The Facts Supporting Probable Cause for the Search Warrant were not Stale, and the Search Warrant was not Defective

1. <u>The Facts Supporting Probable Cause were not Stale</u>

The defendant argues that the facts supporting probable cause for the search warrant were stale. This argument fails because law enforcement provided sufficient,

3

nonstale facts that demonstrated a fair probability to believe evidence of criminal activity would be at the defendant's residence.

Under the Fourth Amendment, no warrant shall issue without the showing of probable cause. U.S. Const. Amend. IV. In addition, a search warrant may issue, "only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." United States v. McCall, 740 F.2d 1331, 1335–36 (4th Cir. 1984) (internal quotes and citation omitted). Cases challenging a warrant for staleness arise in two contexts: when the "facts alleged in the warrant may have been sufficient to establish probable cause when the warrant was issued, but the government's delay in executing the warrant possibly tainted the search" or when the "warrant itself may be suspect because the information in which it rested was arguably too old to furnish 'present' probable cause." Id. at 1336. "A reviewing court's task in each category of cases is slightly different. In testing a warrant in the first category, it must decide whether a valid warrant became invalid due to the lapse of time; when considering those in the second category, it must determine whether information sufficient to constitute probable cause was ever presented." Id. However, the fundamental question is: "did the facts alleged in the warrant furnish probable cause to believe, at the time of the search was actually conducted, that evidence of criminal activity was located at the premises to be search?" Id. The probable cause "need not directly link the evidence sought with the place to be searched. Instead, the nexus requirement also may be established by the

4

nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Jones, 942 F.3d 634, 639 (4th Cir. 2019) (internal quotes and citation omitted).

Here, this court can easily dispose of any challenge to the warrant under the first category because there was no delay in executing the search warrant. Investigator Damien McLean obtained the search warrant for 251 Kate Denny Road on December 9, 2015, and a team of investigators executed it on the same day. Thus, there was no delay in executing the search warrant that would have tainted the search.

Similarly, the court should reject the defendant's argument for staleness under the second criteria, as law enforcement presented sufficient evidence to constitute probable cause, and there was reason to believe that at the time of the search that evidence of criminal activity would be located at the premises to be searched. Specifically, there was incredibly strong evidence that the defendant possessed a firearm as a convicted felon within his residence.

"[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." McCall, 740 F.2d at 1336. Instead, a reviewing court looks at "all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." Id.

In this case, law enforcement investigated a homicide that occurred on November 21, 2015. Initial reports indicated that there was shooting that resulted in death. As part of the homicide investigation, Investigator McLean and other law enforcement

5

interviewed a number of witnesses between November 30 and December 2, 2015 who attended the party. Two things were apparent: first, the defendant's son possessed a gun and fired it during the party; second, witnesses observed the defendant possessing what they believed to be a long barreled revolver. On December 3, 2015, investigators interviewed the defendant and his son. During those interviews investigators learned that the gun Pierce Jr. possessed during the shooting was unsecured in the defendant's residence, and he turned it over to law enforcement. The defendant also claimed that he only possessed a black powder handgun that night and provided that to law enforcement; however, the leather holster provided with it contained .44 caliber ammunition, which did not appear to fit the black powder handgun. Investigators also learned from the defendant's son that there were additional firearms inside of the defendant's residence located inside a safe. Law enforcement was aware that the defendant is a convicted felon and prohibited from possessing firearms. On December 8, 2015, the medical examiner conducted an autopsy on the gunshot victim and retrieved a projectile. Based on all of this evidence, Investigator McLean obtained two search warrants the following day: one for the location of the shooting and a second for the defendant's residence where the gun safe was located. Upon execution of the search warrant at the defendant's residence, investigators recovered one firearm in a bedroom. In a safe inside the residence, investigators recovered a rifle, various ammunition, the defendant's driver's license, and the defendant's prescription medication. The defendant was then arrested for possession of a firearm as a convicted felon.

Here, the issuing judge knew that multiple individuals observed the defendant with a firearm on the night of the homicide. In addition, the issuing judge knew that there was a safe containing firearms in the defendant's residence based on a recent interview with the defendant's son. Finally, the issuing judge knew that the defendant was a convicted felon. Thus, the judge was justified in believing that the defendant possessed evidence of crime inside his residence related to, at a minimum, the defendant possessing a firearm as a convicted felon.

Numerous courts have found probable cause to exist despite large gaps of time between observation of evidence and issuance of a warrant. For example, in United States v. Rahn, the Court ruled that a magistrate was justified in reasonably concluding that a defendant possessed stolen firearms nearly two years after anyone had actually seen him possess them. 511 F.2d 290, 292 (10th Cir. 1975). In McCall, the Fourth Circuit found that a search warrant was sufficiently support by probable cause based on, among other things, a statement that someone saw the defendant possess a firearm seven months prior to the search of his residence. 740 F.2d at 1337. In addition, it is reasonable for a magistrate judge to conclude the defendant still possessed firearms because individuals keep and store firearms where they live. United States v. Anderson, 851 F.2d 727, 730 (4th Cir. 1988) (holding it was a reasonable for a magistrate to conclude that a silencer and firearm would be at the defendant's residence five weeks after an alleged crime); see also Rahn, 511 F.2d at 293; Bastida v. Henderson, 487 F.2d 860, 863 (5th Cir. 1973). Here, multiple witnesses observed the defendant possessing a firearm approximately three weeks

7

before the search of the residence, and law enforcement learned through his son that there were guns in a safe inside the residence less than a week before the search. It was perfectly reasonable for the issuing judge to believe there were firearms still in the defendant's residence, and the facts supporting probable cause were not stale.

2. The Search Warrant was Sufficiently Supported By Probable Cause

The defendant claims that the warrant is fatally defective because law enforcement failed to sufficiently corroborate the witnesses' statements. This argument fails because he cannot show that the eyewitness testimony is unreliable to establish probable cause, and the defendant's own son provided information that there were additional firearms in the defendant's house.

In Illinois v. Gates, the Supreme Court described probable cause as "a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 238 (1983). Further, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a near set of legal rules." Id. at 232. "The probable cause standard is not defined by bright lines and rigid boundaries but allows a [judicial officer] to review the facts and circumstances as a whole and make a common sense determination whether there is a fair probability that evidence of a crime will be found." United States v. Henry, 673 F.3d 285, 290 (4th Cir. 2012) (internal quotation and citation omitted). It is well settled that law enforcement can establish probable cause from any reliable source of information. Draper v. United States, 358 U.S. 307, 313 (1959). Nothing in the Fourth Amendment requires that an investigator conduct

an independent investigation to corroborate specific information provided by a witness or informant; in fact, under the "totality of the circumstances" approach to establishing probable cause, a witness or informant's "veracity, reliability, and basis of knowledge are highly relevant, but they are simply factors to be considered in examining the total information available." United States v. Miller, 925 F.2d 695, 699 (4th Cir. 1991) (internal quotation and citation omitted).

Here, the defendant fails to show, in any way, that the eye witnesses at the party were unreliable. Multiple witnesses who were present at the party observed the defendant possessing a firearm, and each witness consistently described the firearm as a long barreled revolver. This firsthand information alone was sufficient to establish probable cause that the defendant possessed a firearm on the night of the shooting. However, investigators did not stop there. On December 3, they interviewed the defendant and his son at the defendant's residence. The defendant turned over a black powder pistol and .44 caliber ammunition that did not match the pistol. The fact that the defendant had ammunition belonging to a different gun tends to show that he had access to another firearm that would fire the ammunition. In addition, the defendant's son retrieved a .40 caliber pistol from inside the defendant's residence and turned it over to law enforcement. Further, the defendant's son told investigators that there were additional firearms inside the defendant's residence inside a safe. Finally, the defendant was a known convicted felon and thus prohibited from possessing firearms. When considered collectively, under a totality of the circumstances analysis, there is no question there was probable cause to believe that

9

evidence of a crime would be found inside the defendant's residence, specifically evidence that the defendant unlawfully possessed a firearm as a convicted felon and evidence relevant to the shooting that occurred on the defendant's property.

   3. <u>A Good Faith Exception Applies if the Court Finds that the Search Warrant Lacked Probable Cause</u>

Even if the Court finds that the search warrant lacked probable cause, the evidence should not be suppressed under the good faith exception to the warrant requirement. "Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." <u>United States v. Lalor</u>, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting <u>United States v. Leon</u>, 468 U.S. 897, 926 (1984). The good faith exception applies unless "a reasonably well-trained officer ... [should] have known that the search was illegal despite the magistrate's authorization." <u>Leon</u>, 468 U.S. at 922 n.23. The <u>Leon</u> Court outlined four situations in which an officer's reliance on a search warrant would not be reasonable:

   (1) the magistrate was misled by information in an affidavit that the officer knew as false or would have known was false except for the officer's reckless disregard of the truth;

   (2) the magistrate wholly abandoned his detached and neutral judicial role;

   (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

   (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot

10

reasonably presume it to be valid."

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon,* 468 U.S. at 923).

The Defendant cannot reasonable argue that any of these situations would apply here, as it is clear they do not. Even if this court were to find that the warrant lacked probable cause, it clearly was not "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable."* Id. (emphasis added).

## CONCLUSION

Based on the above, the United States respectfully submits that the defendant's Fourth Amendment rights were not violated. Accordingly, the firearms recovered pursuant to the validly issued search warrant should not be suppressed.

WHEREFORE, for all the reasons set forth above, the United States requests the Court to deny the defendant's motion to suppress. The Government respectfully submits that a hearing on the motion is unnecessary.

Respectfully submitted, this 21st day of September 2020.

                                            ROBERT J. HIGDON, JR.

                                            United States Attorney

                                            *BY: /s/ Chad E. Rhoades*
                                            CHAD E. RHOADES
                                            Assistant United States Attorney
                                            Criminal Division
                                            U.S. Attorney's Office, EDNC
                                            150 Fayetteville Street, Suite 2100
                                            Raleigh, North Carolina 27601
                                            Chad.Rhoades@usdoj.gov
                                            Telephone: 919-856-4286
                                            NC Bar No. 48041

CERTIFICATE OF SERVICE

This certifies that a copy of this motion has, 21st day of September 2020, been served upon Counsel for the defendant via Electronic Mail to:

    Brett T. Wentz
    Wentz Law, PLLC
    401 Chestnut St., Suite C
    Wilmington, NC 28401
    910-256-8044
    Fax: 866-206-2443
    Email: brett@brettwentzlaw.com

    ROBERT. J. HIGDON
    United States Attorney

    *BY: /s/ Chad E. Rhoades*
    CHAD E. RHOADES
    Assistant United States Attorney
    Criminal Division
    U.S. Attorney's Office, EDNC
    150 Fayetteville Street, Suite 2100
    Raleigh, North Carolina 27601
    Chad.Rhoades@usdoj.gov
    Telephone: 919-856-4286
    NC Bar No. 48041